**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARY SMITH,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **OPINION** |
| : | **Civ. Action No. 04-4560 (WHW)** |
| **JO ANNE B. BARNHART,** : | |
| **Commissioner of Social Security,** | |
| : | |
| **Defendant.** : | |
| : | |

**Walls, Senior District Judge**

Plaintiff Mary Smith seeks review of the final determination of the Social Security

Commissioner ("Commissioner") who denied her disability insurance claim for benefits and

supplemental security income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  This

Court will remand to the Administrative Law Judge ("ALJ") for further proceedings.

**BACKGROUND**

**A.  Procedural History**

Plaintiff applied for disability insurance benefits and SSI on September 25, 1997  (Tr. 42-

44, 192-95.)[1]  She was denied initially (Tr. 27, 29-33, 197-203), and upon reconsideration.  (Tr.

28, 36-38, 204-06.)  Plaintiff was then granted an administrative hearing on March 23, 1999

before the ALJ, at which time plaintiff appeared and testified.  (Tr. 319-64.)  Upon *de novo*

review, the ALJ issued a decision on January 28, 2000 denying plaintiff's claim based upon the

---

[1]      All references are to the official transcript on appeal filed with the Court on July
8, 2005.

1

conclusion that she could perform her past relevant work as a silk screen machine operator.  (Tr. 207-17.)

Plaintiff filed a later application for benefits on March 13, 2000 that covered a different time period.  (Tr. 220.)  On June 26, 2000, plaintiff was found disabled and awarded benefits as of April 15, 1997.  (Tr. 225.)  The Appeals Council then sent notice on November 2, 2001 informing plaintiff that the ALJ's June 26, 2000 award of benefits would be reviewed.  (Tr. 221-23.)  On February 12, 2002, the Appeals Council found error in the ALJ's decision, vacated the decision, consolidated plaintiff's two applications, and remanded the matter for further proceedings.  (Tr. 224-27.)

Thereafter, on April 30, 2003, a second administrative hearing was held before the ALJ with testimony from vocational expert ("VE") Rocco Meola and medical expert ("ME") Dr. Nathan Zemel.  (Tr. 17-26.)  The ALJ again considered plaintiff's case *de novo* and on October 20, 2003, found that plaintiff was not disabled because she could perform her past relevant work as an assembler and silk screen operator.  Id.  This became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on July 27, 2004.  (Tr. 8-11.)  Plaintiff timely commenced this appeal.

**B.  Personal and Employment History**

Plaintiff is a sixty-three year old woman with a twelfth grade education.  (Tr. 42.)  She was fifty-one years old at the alleged onset of her disability.  (Tr. 328.)  In the past, plaintiff  has been employed as a silkscreen operator, an assembler, a retail customer service representative

and a cook.  (Tr. 211.)  Plaintiff alleges that she became disabled on July 1, 1993 due to pain in her knees and lower back and numbness in her right foot.[2]  (Tr. 21.)  Plaintiff is five foot three inches.  (Tr. 326.)  She has steadily gained weight since the alleged onset of her disability and claims she is unable to either sit or stand for extended periods of time.  (Tr. 53.)

As a silk screen operator at Calumet Manufacturing Company from 1975 until 1991, plaintiff screened print onto plastic parts for cosmetics cases using her right foot to push down a pedal that would pull the screen down over the product.  (Tr. 446.)  The job was done while seated and required no lifting.  (Tr. 338.)  VE Rocco Meola, who has worked in the screening industry for over 30 years, classified the silk screen operating job as unskilled sedentary work,[3] as it does not require rapid succession of the pedal.  (Tr. 447.)  He also testified that the machine could be set up to operate using either the left or right foot.  Id.

As a customer service representative at K-mart Corporation from 1991 until 1992, plaintiff stocked shelves and price-labeled products.  (Tr. 340.)  The job required standing the

---

[2] A disability report was submitted by the plaintiff as part of the application for disability benefits.  The disability report includes descriptions and dates of the alleged disability, medications taken, and functional reports describing the extent of limitation caused by the alleged disability.

[3] Section 404.1567(a) of the Code of Federal Regulations provides:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

entire day and was classified by VE Rocco Meola as light[4] and unskilled.  (Tr. 446.)

Plaintiff later served as an assembler at Cosmair Cosmetic Incorporated from September 1992 until July 1993.  (Tr. 74.)  The job of assembler required plaintiff to place security seals and lids on L'Oreal cosmetic jars and assemble makeup powder compacts.  (Tr. 65.)  According to VE Meola, being a compact assembler required lifting one box of compacts weighing approximately ten pounds and assembling the products.  (Tr. 448.)  This work was classified as unskilled and ranging between sedentary and light work.  Id.  Plaintiff had the option of standing or sitting.  (Tr. 389.)

Finally, plaintiff's last job was as a cook in a daycare center from September 1996 through April 1997.  (Tr. 384.)  VE Meola classified the work as a cook to be light and unskilled because it required standing and some lifting.  (Tr. 446.)

In terms of the limitations caused by plaintiff's disability, plaintiff's disability report indicated that her impairments did not result in any change in her ability to care for her personal

---

[4] Section 404.1567(b) of the Code of Federal Regulations provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [the Social Security Administration] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

needs, perform house chores, and shop and run errands.  (Tr. 56.)  This was reaffirmed both at

the March 23, 1999 hearing and the April 30, 2003 hearing.  (Tr. 398-99.)  Plaintiff also testified

at the March 23, 1999 hearing that she napped throughout the entire day because she only

averaged about five hours of sleep a night due to leg pain that required her to sleep in specific

positions.  (Tr. 343.)   Plaintiff further testified that her medication made her drowsy.  (Tr. 344.)

No such testimony was made in the second hearing.  (Tr. 369-433.)


**C. Medical History**

In her September 25, 1997 application for benefits, plaintiff claims the onset of her

disability began on July 1, 1993.  (Tr. 42-44.)  No evidence was reported to substantiate this

claim until September 9, 1996, when James M. Lee, M.D. examined plaintiff and recorded pain

and swelling in the right knee.  (Tr. 99.)  Dr. Lee also noted that plaintiff believed the right knee

pain began around December of 1995, even though in later reports, plaintiff said her knee

problems began in 1996.  (Tr. 88.)  On April 4, 1997, plaintiff underwent arthrosporic surgery on

her right knee based on a diagnosis of a torn medial meniscus and on April 29, she had full

extension with no instability in the right knee.  (Tr. 97.)  Dr. Lee then wrote on November 19,

1997 that there was no swelling or instability in the knees but that she had lower back pain due to

excess weight.  (Tr. 95.)  Plaintiff was placed on Vicoprofen and Duract for her pain and was

scheduled to have Hyaluronic Acid injected into the right knee for better movement.  Id.

However, Dr. Lee described plaintiff as doing well.  Id.

On January 13, 1998, Dr. Mohit conducted a consultative examination of plaintiff.  (Tr.

88.)  Dr. Mohit observed plaintiff to ambulate slowly and to be unable to heel or toe walk.  (Tr. 89.)  Plaintiff reported to Dr. Mohit that the surgery helped and that she no longer needed a cane for her knee, but she continued to have pain in both knees and "on and off" pain in her back.  (Tr. 88.)  In addition, plaintiff was limited in her ability to do back extensions and she had pain in both legs when doing straight leg extensions.  Id.  Her knees had effusion and tenderness on palpitation, and the right knee had limited extension while the left knee and ankles seemed to be stable and have a normal range of movement.  Id.  Dr. Mohit also observed that plaintiff was not uncomfortable in the seated position during his examination.  Id.

A physical residual functional capacity assessment done by B. Mirti, M.D. on February 5, 1998 opined that plaintiff could carry twenty pounds occasionally and ten pounds frequently, stand for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push or pull things with an unlimited capacity.  (Tr. 102.)  These conclusions were supported by the results of  Dr. Mohit's examination.  Id.

During the hearing on March 23, 1999, plaintiff testified that she was only able to sit for half an hour and stand for fifteen minutes.  (Tr. 346-47.)  She admitted to not taking her prescribed medication for high blood pressure on a daily basis and that this caused headaches and blurry vision.  (Tr. 348.)  Plaintiff complained of lower back pain and pain in both knees.  (350-54.)  At the time, she was using a cane and a brace for her right knee.  (Tr. 356.)

A second consultative examiner saw plaintiff on June 1, 2000 pursuant to her later application for benefits.  (Tr. 292.)  Maria Vastesaeger, M.D. found plaintiff weighed 222 pounds and had normal blood pressure.  (Tr. 294.)  She had difficulty getting up from a chair and

changing positions.  Id.  She walked with a limp on her right side with or without a cane.  Id.

Plaintiff was unable to squat, made no attempt to heel or toe walk, and was only able to tandem

walk when holding on.  Id.  There was tenderness in her lumbosacral spine and sacroiliac area

and limited extension in both legs when attempting straight leg raises.  Id.  There were palpable

crepitations in her knees with soft tissue swelling and surface tenderness on the right.  (Tr. 295.)

Plaintiff resisted any range of motion testing of her right knee due to pain.  (Tr. 294.)  Her left

knee was unable to resist beyond 100 degrees due to lower back pain.  Id.  Plaintiff refused to

remove her customized ankle brace so Dr. Vastesaeger was unable to evaluate her right ankle.

(Tr. 295.)

A second physical residual functional capacity assessment was performed in response to

plaintiff Smith's later application.  (Tr. 304.)  Dr. John N. Classen opined on June 19, 2000 that

plaintiff was able to lift and/or carry up to twenty pounds occasionally and ten pounds frequently.

Id.  He believed plaintiff could stand and/or walk and sit for six hours each in an eight hour day.

Id.  Also, Dr. Classen concluded that plaintiff Smith was limited in the lower extremities to

pushing and/or pulling and that the cane she carried was not medically necessary.  Id.

On June 11, 2001, the claimant had surgery on her right ankle to repair tendons.  (Tr. 185-

89.) A magnetic resonance image from July 11, 2001 revealed a small joint effusion and

degenerative osteoarthritic changes of the joint. Id.  On October 14, 2002, she had arthroscopic

right knee surgery. Id.

The last piece of plaintiff Mary Smith's complex medical history is a letter from Dr.

James M. Lee dated December 5, 2003.  (Tr. 317.)  The letter affirms past surgery for a posterior

tibial tendon rupture and arthroscopic surgery on the right knee.  Id.  Dr. Lee describes

improvement in right knee pain from physiotherapy.  Id.  He also noted an antalgic gait on

ambulation and recent swelling of the ankle.  Id.  Dr. Lee's final diagnosis was post traumatic

internal derangement of the right knee and status post rupture of the posterior tibial tendon of the

right ankle.  Id.  He concluded that plaintiff was still completely and totally disabled, although

the record reveals no similar assessment before this letter.  Id.

ME Dr. Nathan Zemel testified at plaintiff's hearing on April 30, 2003 and opined that

plaintiff was able to lift twenty pounds occasionally and ten pounds frequently.  (Tr. 429.)  He

estimated that her residual functional capacity dropped to a narrow range of light work due to

limitations in pushing and pulling and in pedal operation on the right lower extremity.  Id.

Plaintiff's high blood pressure, in Dr. Zemel's opinion, did not cause any functional limitations.

(Tr. 442.)  He also stated that he considered the plaintiff's weight when making these residual

functional capacity assessments.  (Tr. 444.)

Over time, plaintiff was prescribed various medication which she claimed caused

drowsiness.  (Tr. 49.)  The earliest record of prescription is by a Dr. Desquitado who prescribed

Zebeta for plaintiff's high blood pressure on June 2, 1997, although plaintiff admitted to not

having taken her medication on the next visit in August of 1997.  (Tr. 86.)  Plaintiff was then

prescribed Vicoprofen, Relafen, Duract, and Lortab by Dr. Lee. (Tr. 112.)  Dr. Vastesaeger's

June 1, 2000 examination reported that plaintiff was taking Relafen and Norvasc but was no

longer prescribed Vioxx or Celebrex because those medications gave her no relief.  (Tr. 292.)  A

June 14, 2000 exam by the Office of Disability reported that plaintiff was taking Norvasc daily

8

for her high blood pressure.  (Tr. 312.)

**STANDARDS**

**A.      Standard of Review**

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C.

§ 405 (g).  The Commissioner's decision stands if "supported by substantial evidence." 42

U.S.C. §§ 405(g), 1383(c)(3); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).  "Substantial

evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  Metro Stevedore Co. v. Rambo, 521 U.S.

121, 149 (1997) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  While

substantial evidence must have real probative weight it "may be less than a preponderance."

Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard v. Sec'y of Health and

Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)).

"Despite the deference due to administrative decisions in disability benefit cases,

appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if

the [Commissioner]'s decision is not supported by substantial evidence.'" Morales v. Apfel, 225

F.3d 310, 317 (3d Cir. 2000).  Cursory conclusions unsupported by evidence cannot justify an

ALJ's decision.  Id.  "[A] reviewing court may remand a case to the Secretary for good cause,

'where relevant, probative and available evidence was not explicitly weighed in arriving at a

decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403,

409 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

In determining if there is substantial evidence to support the commissioner's decision, the

reviewing court must consider: "(1) objective medical facts; (2) diagnoses and expert opinions of examining physicians; (3) subjective evidence of pain; and (4) the claimant's educational background, work history and age." Snee v. Sec'y of Health & Human Servs., 660 F.Supp. 736, 738 (D.N.J. 1987).  Accord Balock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972).  In order for this Court to properly conduct judicial review and to avoid "judicial usurpation of administrative functions" it must ensure that the administrative decision... [is] accompanied by a clear and satisfactory explanation of the basis on which it rests." Id.  Otherwise, remand is appropriate. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).


**B.      Standard for the Commissioner's Determination of Disability**

Disability is defined by the Social Security Act as "inability to engage in any substantial gainful activity by any reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423 (d)(1)(A).

The Commissioner must follow a five-step sequential process to determine if an applicant is disabled and eligible for Social Security disability benefits.  20 C.F.R.  § 404.1520.  The Commissioner must first determine whether or not the claimant is currently engaged in "substantial gainful activity."  Plummer, 186 F.3d at 428.  "Substantial gainful activity" is defined as "the performance of significant physical or mental duties... for remuneration or profit."  Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978).

Second, if the claimant is not engaged in "substantial gainful activity" then the ALJ must

next determine if the claimant is suffering from a severe impairment. <u>Plummer</u>, 186 F.3d at 428. A severe impairment is defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." <u>Barnhart v. Thomas</u>, 124 S.Ct. 376, 379 (2003); 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R §§ 404.1523, 416.923.

If the claimant's impairments are severe, the ALJ must make a third determination that they are listed in Appendix 1 to subpart P of the regulations or are equivalent to those listed in the appendix, then the ALJ must make a fourth finding regarding the claimant's "residual functional capacity to perform" his or her "past relevant work." <u>Id.</u> "Residual functional capacity is defined as what a claimant can still do despite his limitations." <u>Burns v. Barnhart</u>, 312 F.3d 113, 119 (3d Cir. 2002).

If the ALJ holds that the claimant cannot return to his or her "past relevant work" due to the impairments. Then the ALJ must determine if there are "other jobs existing in significant numbers in the national economy which the claimant can perform," taking into account his or her educational and work experiences. <u>Plummer</u>, 186 F.3d at 428.

If a finding of disability or non-disability can be made at any point in the sequential analysis, the ALJ will not review the claim further. 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant bears the ultimate burden of establishing steps one through four. <u>Adorno v. Shalala</u>, 40 F.3d 43, 46 (3d Cir. 1994). At step five, the burden shifts to the ALJ to demonstrate that there is other work in the national economy which the claimant can perform. <u>See</u> <u>Bowen v. Yuckert</u>, 482

U.S. 137, 146 n.5 (1987); <u>Kangas v. Bowen</u>, 823 F.2d 775, 775 (3d Cir. 1987).

**ANALYSIS**

In step one of the Social Security benefits analysis, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since April 1997, when she was employed as a cook at a daycare center.  (Tr. 21.)  In his step two and three analysis, the ALJ concluded that plaintiff had a severe impairment from her lower back pain and right knee and ankle injury, but such impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 23.)  As plaintiff's impairments did not meet or equal any of the criteria set out in Appendix 1, no *per se* disability was merited and the ALJ proceeded to step four to determine whether plaintiff retained the residual functional capacity to perform the requirements of her past relevant work. (Tr. 24.)  The ALJ found that from April 1997 through March 2000, plaintiff retained the residual functional capacity for a full range of light work.  <u>Id.</u>  The ALJ further concluded that from April 2000 to the present, plaintiff had the residual functional capacity for a narrow range of light work.  <u>Id.</u>  Thus, the ALJ concluded that plaintiff was able to return to both her past relevant work as a silkscreen operator and assembler because a silk screen operator was classified as sedentary to light work and assembler was classified as sedentary work.  (Tr. 24-25.)  Because the ALJ determined that plaintiff was able to perform her past relevant work, he performed no analysis at step five.

Smith asserts three distinct challenges to the ALJ's step four determinations.  First, she contends that the ALJ failed to properly evaluate her subjective complaints of pain and drowsiness.  (Pl.'s Br. at 12.)  Second, plaintiff argues that the ALJ's finding that she was able to

12

perform a full range of light work from April 1997 through March 2000 and a narrow range of light work from April 2000 to present was erroneous as it was not based on substantial evidence. (Pl.'s Br. at 15.)  Finally, plaintiff contends there was not substantial evidence to support the ALJ's conclusion that she did not retain the residual functional capacity to return to her past relevant work.  (Pl.'s Br. at 19.)

**A.     The Commissioner's Evaluation of Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ overlooked her complaints of drowsiness from her medication and her subjective complaints of pain in her back, knees, and right ankle.  (Pl.'s Br. at 12.)  In particular, plaintiff relies on Social Security Rule ("SSR") 96-7p which requires an ALJ to give specific reasons for his findings on credibility.  (Pl.'s Br. at 12.)  SSR 96-7p provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible'.... The determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186 (S.S.A.).  See also Cotter, 642 F.2d at 706 ("[A]n examiner's findings should be as comprehensive and analytical as feasible... so that a reviewing court may know the basis for the decision").  The Third Circuit has commented that although "it is not necessary for the ALJ to make reference to every relevant treatment note in a case where the claimant has voluminous medical records... the ALJ must still adhere to his responsibilities as a factfinder to consider and evaluate the medical evidence in the record consistent to regulations and case law."  Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  "[T]here is a particularly acute need for some

explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence on the record." Cotter, 642 F.2d at 706.  In the absence of such an indication, the reviewing court cannot determine whether significant probative evidence was deemed not credible or whether it was simply ignored.  Weber v. Massanari, 156 F. Supp. 2d 475, 483 (E.D. Pa. 2001)(citing Cotter, 642 F.2d at 705).

The ALJ did not provide a specific explanation to support his conclusion that the claimant's complaints are not credible.  He does not rely on substantial evidence from the record, of which there was an abundance, but simply recites in one sentence, "[Claimant] testified that she has been unable to work since 1993 due to knee and ankle problems but there is no evidence of treatment for a knee problem until 1996 or of any ankle problem until 2000."  (Tr. 24.)

SSR 96-7p forbids such a conclusory statement.  With ample medical evidence in the record it is simply inadequate to dispose of plaintiff's credibility in one sentence without sufficient reference to the record.  In particular, while the ALJ's decision to discount plaintiff's complaints of drowsiness was supported by substantial evidence, the ALJ failed to point to substantial evidence to support his rejection of plaintiff's subjective complaints of pain.

1.    *Plaintiff's drowsiness*

Plaintiff argues that the ALJ erred in discounting plaintiff's claim that her pain medication made her drowsy.  The ALJ reviewed some of the side effects caused by the medication, including dry mouth and headaches, but made no mention of drowsiness.  (Tr. 24.) While drowsiness may have been a side effect suffered by plaintiff, at least one court has

14

observed that while "[d]rowsines often accompanies the taking of medication... and it should not be viewed as disabling unless the record references serious functional limitations." Rutherford v. Barnhart, 399 F.3d 546, 555 (3d Cir. 2005) (citing Burns, 312 F.3d at 131).  No medical evidence of any functional limitation resulting from the side effects of plaintiff's medication has been presented in this case.  Also, plaintiff admits she did not take her medication daily.  Moreover, it is revealing that plaintiff made no mention of her earlier claim of drowsiness in her recent March 2003 testimony.  This Court finds that the ALJ's decision to discount plaintiff's alleged side effects of drowsiness was based on substantial evidence.

        2.     *Plaintiff's subjective complaints of pain*

Plaintiff also argues that the ALJ failed to consider her subjective complaints of pain and the functional limitations such pain placed on her.  (Pl.'s Br. at 14.)  There is merit to this claim.

A claimant's testimony of subjective complaints is entitled to great weight, particularly when supported by competent medical evidence.  Weber, 156 F. Supp. 2d at 485 (citing Dobrowolsky, 606 F.2d at 409).  Indeed, the ALJ has a duty to seriously weigh a claimant's subjective complaints of pain, even when those complaints are not supported by objective evidence.  Ventura v. Shalala, 55 F. 3d 900 (3d Cir. 1995) (citing Mason v. Shalala, 994 F. 2d 1058, 1067 (3d Cir. 1993)).

Treating physicians' reports must also be accorded great weight when their opinions reflect expert judgement based on a continuing observation of the patient's condition over a prolonged period of time.  Thompson v. Barnhart, 281 F. Supp. 2d 770, 777 (3d Cir. 2003)

(citing <u>Morales</u>, 225 F.3d at 317).  The ALJ can accredit more or less weight to treating physician opinions depending on the supporting explanations.  <u>Borowka v. Barnhart</u>, 380 F. Supp. 2d 399, 407 (D. Del. 2005) (citing <u>Rosario v. Massanari</u>, No. 00-653, 2001 WL 1180279, at *8 (D. Del. Sept. 26, 2001)).  In the end, the ALJ is the evaluator of the intensity and the persistence of pain or symptoms and the extent to which they impact the individual's ability to work.  <u>Pearson v. Barnhart</u>, 380 F. Supp. 2d 496 (D. N.J. 2005) (citing <u>Hartranft v. Apfel</u>, 181 F.3d 358 (3d Cir. 1999)).  However, the ALJ must specify his reasons for rejecting the plaintiff's treating physician's reports of pain and support his conclusion with medical evidence from the record.  <u>See</u> <u>Pearson</u>, 181 F.3d at 405 (citing <u>Matullo v. Bowen</u>, 926 F. 2d 240, 245 (3d Cir. 1990)).

Defendant lists evidence from the record to support the ALJ's ultimate decision.  This evidence includes findings by the two State agency physicians, Dr. Mirti and Dr. Classen, who opined that plaintiff could lift twenty pounds occasionally and ten pounds frequently (Def.'s Br. at 8), and plaintiff's disability report, where she indicated that her impairments did not result in any change in her ability to care for her personal needs, perform house chores, and shop and run errands.  (Tr. 56.)  All of this evidence is acceptable to support the ALJ's finding.  However, neither defendant nor this Court is in a position to play the role of factfinder.  That role is reserved to the ALJ, whose job it is to not only make the determination of disability, but also to explain such a determination with evidence from the record.  Here, the ALJ must explain why he discounted plaintiff's subjective complaints of pain when objective medical evidence from the record supports her claims.  Importantly, the ALJ's decision does not address the issue of plaintiff's subjective complaints of pain, which are supported by the objective medical opinion of

Dr. Lee.  Without further exposition from the ALJ, this Court cannot be certain whether the ALJ legitimately discounted the evidence or failed to examine the evidence.  A more thorough evaluation of plaintiff's subjective complaints of pain is warranted upon remand.


**B.      The ALJ's Residual Functional Capacity Assessments**

Alternatively, plaintiff argues that the ALJ's assessment that she could have performed a full range of light work from April 1997 through March 2000 and a narrow range of light work from April 2000 onward, was not based on substantial evidence.  The ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four. Fargnoli, 247 F.3d at 41 (citing Burnett  v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000); 20 C.F.R §§ 404.1527(e)(2), 404.1545(a), 404.1546.  Moreover, the ALJ's finding of residual functional capacity must "be accompanied by clear and satisfactory explication of the basis on which it rests."  Fargnoli, 247 F.3d at 41 (citing Cotter, 642 F.2d at 704).

This court cannot say that the ALJ supported his residual functional capacity assessment with substantial evidence from the record.  In making his assessment, the ALJ writes:

> [T]he undersigned finds the claimant had no impairment that was severe prior to April 1997.  From April 1997 through March 2000, she retained the residual functional capacity for a full range of light work.  From April 2000 to the present, she has had the residual functional capacity for a narrow range of light work due to a right lower extremity limitation in pushing and pulling and postural limitations in never climbing, and no more than occasional stooping, kneeling, crouching and crawling.

(Tr. 24.)  While this Court is confident that the ALJ did not make these assessments himself, we have no other alternative but to remand for a more comprehensive analysis of the evidence

consistent with the requirements of applicable regulations and the law of the Third Circuit.

As discussed, "where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions and will vacate or remand a case where such an explanation is not provided." Fargnoli, 247 F.3d at 43 (citing Cotter, 642 F.2d at 706). Here, there are many discrepancies within the record that the ALJ must address. These include, but are not limited to, Dr. Lee's past assessments of plaintiff, especially his assessment that she is still completely and totally disabled, plaintiff's subjective complaints of pain, and plaintiff's use of a cane. This issue is remanded for further proceedings.


**C.      Plaintiff's ability to perform her past relevant work**

In evaluating a claim for benefits, the ALJ must consider all of the evidence in the case. Weber, 156 F. Supp. 2d at 483; 20 C.F.R §§ 416.920(a); Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984). The ALJ must "explicitly" weigh all relevant, probative, and available evidence. Weber, 156 F. Supp. 2d at 483 (citing Adorno, 40 F.3d at 48).

Plaintiff's ability to perform past relevant work is inextricably linked to the ALJ's residual functional capacity assessment. In determining plaintiff's ability to perform previous work, the ALJ must first make a proper assessment of plaintiff's residual functional capacity in order to determine whether plaintiff's injury is so limiting that it precludes her from returning to her past work. As discussed, the ALJ failed to provide substantial evidence to support his assessment of plaintiff's residual functional capacity. In particular, the ALJ provided little evidence to support his discounting of plaintiff's subjective complaints of pain that are supported

18

by her personal physician.  The issue of whether plaintiff can perform her past relevant work is remanded so all evidence from the record can be properly weighed consistent with this opinion.

### D. CONCLUSION

Plaintiff's first contention, that the ALJ did not review her subjective complaints of pain, will be remanded so the ALJ can discuss his reasons for discounting this factor.  In addition, plaintiff's contention that the ALJ's residual functional capacity assessment was not based on substantial evidence will be remanded for the ALJ to support any assessment with substantial evidence from the medical record of this case.  Following such an assessment, the ALJ must determine whether plaintiff is able to perform her past relevant work.

s/ William H. Walls
**William H. Walls, U.S.D.J**